IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Rochester Erving,<br><br>Plaintiff,<br>v.<br><br>Enviri Corporation,<br><br>Defendant. | C/A No. 3:24-cv-4750-JFA-TER<br><br><br>**MEMORANDUM OPINION AND ORDER** |

## I. INTRODUCTION

Plaintiff Rochester Erving ("Plaintiff") sues his former employer Enviri Corporation, ("Defendant" or "Enviri"), alleging federal and state law claims. In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02(B)(2) (D.S.C.), the case was referred to the Magistrate Judge for pretrial proceedings. Subsequently, Defendant filed a Motion for Summary Judgment as to all of Plaintiff's claims. (ECF No. 26).

After reviewing the Motion and all responsive briefing, the Magistrate Judge assigned to this action prepared a thorough Report and Recommendation ("Report"), which opines that Defendant's Motion for Summary Judgment should be granted. (ECF No. 33). The Report sets forth, in detail, the relevant facts and standards of law on this matter, and this Court incorporates those facts and standards without a full recitation. *Id.*

Plaintiff filed objections to the Report, (ECF No. 39), to which Defendant filed a Reply. (ECF No. 40). Thus, this matter is ripe for review.

## II. STANDARD OF REVIEW

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). A district court is only required to conduct a *de novo* review of the specific portions of the Magistrate Judge's Report to which an objection is made. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); *Carniewski v. W. Virginia Bd. of Prob. & Parole*, 974 F.2d 1330 (4th Cir. 1992). In the absence of specific objections to portions of the Magistrate's Report, this Court is not required to give an explanation for adopting the recommendation. *See Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983). Thus, the Court must only review those portions of the Report to which Petitioner has made a specific written objection. *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 316 (4th Cir. 2005). Then, the court may accept, reject, or modify the Report or recommit the matter to the magistrate judge. 28 U.S.C. § 636(b).

"An objection is specific if it 'enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute.'" *Dunlap v. TM Trucking of the Carolinas, LLC*, No. 0:15-cv-04009-JMC, 2017 WL 6345402, at *5 n.6 (D.S.C. Dec. 12, 2017) (citing *One Parcel of Real Prop. Known as 2121 E. 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996)). A specific objection to the Magistrate Judge's Report thus requires more than a reassertion of arguments from the complaint or a mere citation to legal authorities. *See Workman v. Perry*, No. 6:17-cv-00765-RBH, 2017 WL 4791150, at *1 (D.S.C. Oct. 23, 2017). A specific objection must "direct the court to a specific error

in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

"Generally stated, nonspecific objections have the same effect as would a failure to object." *Staley v. Norton*, No. 9:07-0288-PMD, 2007 WL 821181, at *1 (D.S.C. Mar. 2, 2007) (citing *Howard v. Secretary of Health and Human Services*, 932 F.2d 505, 509 (6th Cir. 1991)). The Court reviews portions "not objected to—including those portions to which only 'general and conclusory' objections have been made—for *clear error*." *Id.* (citing *Diamond*, 416 F.3d at 315; *Camby*, 718 F.2d at 200; *Orpiano*, 687 F.2d at 47) (emphasis added).

**III. DISCUSSION**

As stated above, the relevant facts and standards of law on this matter are incorporated herein from the Report. (ECF No. 33). However, a brief recitation of the factual background is necessary to address Plaintiff's objections. Plaintiff brings claims for discrimination, retaliation, and failure to accommodate in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 1210, *et seq.* Plaintiff worked for Defendant for over thirteen years as a mechanical assembler. Importantly, one of the many essential functions of this position includes the ability to lift 40 pounds, and the ability to stand/bend/stretch, etc. When Plaintiff was hired, he was able to perform all essential functions of the position. Around November 2015, Plaintiff injured his back and was restricted to lifting no more than 15 pounds. Plaintiff went out on leave pursuant to the Family and Medical Leave Act ("FMLA") in July 2016. When Plaintiff returned from FMLA leave, Defendant informed him that he could not return to work unless he returned

with no restrictions. Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC"), which resulted in the EEOC brokering a conciliation agreement between Plaintiff and Defendant. The conciliation agreement provides that Defendant agrees to comply with all requirements of the ADA among other requirements. Plaintiff returned to work on the cab assembly team as a reasonable accommodation.

In April 2018, Plaintiff's doctor provided him a letter explaining that due to an arm injury, he was severely limited to any activities that required the strength of that arm, and could not do any activities that required extensive use of his left arm. Plaintiff informed Defendant's human resources business partner, Amanda Fogle, ("Fogle"), of this problem.

Plaintiff performed his job above average from 2018 through Fall 2022. Plaintiff has submitted evidence that he had no substantial work issues until June 2022, when Defendant made staffing changes to the cab assembly team. Plaintiff states that around this time, he expressed concern to his supervisor, Anthony Palomba, ("Palomba"), about potential nepotism regarding the hiring of a family member of the plant's production manager. Plaintiff states that at this point, Palomba became hostile towards Plaintiff.

In November 2022, Palomba directed Plaintiff to lift a 600-pound seat by himself. Plaintiff told Palomba he could not lift the seat alone because of his back injury, and that he always lifted seats with the assistance of other members of the cab department. Plaintiff states that Palomba became visibly upset and walked off to human resources. Also in November 2022, Plaintiff was informed that he and two other cab assembly members were to be cross-trained to perform both electrical and mechanical work. Plaintiff informed

Palomba that he could not pull wires and that Defendant had knowledge of a preexisting injury that would prevent him from moving his arm. Palomba asked human resources for work restrictions applicable to Plaintiff and there were none filed for him. Plaintiff states that no one in human resources nor anyone else employed by Defendant discussed Plaintiff's disabilities or accommodations for them before training on electrical tasks. Plaintiff informed Amy Lewis, ("Lewis"), the safety manager, that he had a disability in his left arm, could not lift anything over five pounds, could not twist his arm in certain ways, and felt he was being discriminated against.

In December 2022, Palomba sent an email to other employees of Defendant that Plaintiff had started the training the day before, and he had been informed that Plaintiff was "simply just sitting in the cab not working on anything," and that he personally observed Plaintiff standing on the outside of the cab with his hands in his pockets multiple times. Paloma states that he asked Plaintiff to confirm that he would be participating in the training and he said "I'll be in there, but that's all I can tell you." (ECF No. 30-26). Thereafter, Palomba emailed the following to human resources and Lewis:

> When I asked him this morning if he was still working in his assigned cab today just going over with everyone where they will be working he said I'm in there but that's all I can tell you. This needs to be handled whether he is suspended until we know what if any limitations he has and if we can even accommodate them. Until then he will just be a body standing around on the clock without any production. I can't justify his hours or labor costs this way.

(ECF No. 30-20).

On December 14, 2022, Defendant terminated Plaintiff. Plaintiff's disciplinary form states he was terminated for insubordination where on "December 12, 13, & 14, 2022, you were asked by your supervisor to work and train inside a cab; as part of the training matrix to have you trained on multiple jobs besides building seats. You were present in the area, but you were not productive and refused to train/work when asked on multiple occasions." (ECF No. 26-23).

Defendant completed the following notes regarding Plaintiff's termination:

> Mr. Erving walked into the HR office (LaQuindelyn Belton) around 8:30am on November 10, 2022 to voice his concerns and interaction with Material Analyst (Samantha Midkiff). Samantha asked Rochester to account for a seat that was missing in the area that Rochester had previously worked on. There was no verbal altercation between the two, Rochester was concerned because Anthony Palomba had previously met with the team and told them not to work on or get seats without a work order and to no longer take parts from one job to complete another job. Rochester's concern was that he did not want to be disciplined for being insubordinate against his supervisor for taking parts from one seat to another to complete a job and agreed that Samantha was correct and did not need a work order for the completed seats.
> …
> I called Anthony Palomba to my office and delivered the concerns that Mr. Erving had. Anthony and I scheduled a meeting that included Mr. Erving and Samantha Midkiff . . .. In this meeting we discussed that everyone in the area will be cross trained in the up and coming weeks and will have training on process control to assist with properly documenting work orders. (Giving Mr. Erving a clear understanding of the expectations for the area.) . . . .
>
> On Monday November 14 Samantha scheduled a meeting to cover Process Control and the handling of paperwork in the cab and productions areas. After the meeting Rochester notified Anthony Palomba that he had a preexisting injury that would prevent him from moving his arm and that HR knows and has his documentation. Anthony asked HR for work restrictions for Rochester and there were none filed for him. I (LaQuindelyn Belton) spoke with Rochester and asked him to have his doctor resend the forms that he was referring to that he thought were in filed in HR because there were no restrictions or accommodations on file. Rochester retrieved the forms and

> returned them after Thanksgiving. Rochester was notified that there were no restrictions and if at any time he felt that he could not complete a task he should notify his supervisor or come to HR.
>
> Cross training began on Monday December 12 and Rochester refused to work or cross train on December 12–14, 2022. Anthony inquired about Rochester lack of performance and Rochester responded to Anthony saying that he will be in the area. Anthony reported to HR that Mr. Rochester was at work both days and had not completed any task, work, nor supported Harry Lucas in being cross trained.
>
> Rochester Erving was terminated on December 14, 2022 for a Group 1 Rule Violation: Insubordination.

(ECF No. 30-18).

The Report recommends that this Court grant Defendant's Motion for Summary Judgment and dismiss all Plaintiff's claims. (ECF No. 33). Specifically, the Report recommends this Court find Plaintiff: failed to present direct evidence of discrimination; is not a qualified individual under the ADA; cannot show Plaintiff's non-discriminatory reason for termination is pretextual; and lacks evidence to create a dispute of fact regarding his retaliation and failure to accommodate claims. *Id.* Plaintiff enumerates seven specific objections. Each objection is addressed herein.

<u>Objection 1</u>

Plaintiff first generally argues that the Report "applies the wrong summary judgment standard by resolving disputed facts in favor of Defendant and requiring Plaintiff to 'prove' his claims." (ECF No. 39, p. 1). Plaintiff argues that the Magistrate Judge misapplied the summary judgment standard and required him to "prove" his case rather than present a dispute of material fact. *Id.* at 1–3. A review of the Report and related filings do not support Plaintiff's argument. The Report makes clear that "the moving party bears

the burden of showing that summary judgment is proper" and such a finding is only proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. (ECF No. 33, p. 14) (citing Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986)). However, if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof, summary judgment is proper. *Id.*

Here, the Report did not improperly apply the summary judgment standard and require Plaintiff to "prove" his case. Rather the Report recommended that Defendant's Motion for Summary Judgment be granted because in the face of Defendant's Motion, Plaintiff did not provide evidence to create a genuine dispute of material fact to avoid summary judgment.

Thus, Plaintiff's first objection is overruled.

<u>Objection 2</u>

Plaintiff's second objection argues that the Report "fails to find Plaintiff's direct evidence of discrimination sufficiently probative to reach a jury." (ECF No. 39, p 3). Plaintiff essentially argues that he has presented direct evidence of discrimination based on his disability through the production of Palomba's email. *Id.* at 4. Palomba's email to human resources and Lewis stated:

> When I asked him this morning if he was still working in his assigned cab today just going over with everyone where they will be working he said I'm in there but that's all I can tell you. This needs to be handled whether he is suspended until we know what if any limitations he has and if we can even accommodate them. Until then he will just be a body standing around on the clock without any production. I can't justify his hours or labor costs this way.

(ECF No. 30-20).

Plaintiff argues that the statements contained in this email independently reflect a discriminatory attitude and bears directly on Defendant's decision to terminate him. (ECF No. 39, p. 3).

The Fourth Circuit defines direct evidence as "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *Rhoads v. F.D.I.C.*, 257 F.3d 373, 391–92 (4th Cir. 2001). As stated in the Report, if a court needs to speculate to fill in the gaps regarding Defendant's motive, the circumstances do not warrant a reasonable inference of discrimination. Plaintiff cites *Kenny v. Yellen*, to support his argument that Palomba's statement alone is sufficient direct evidence to survive summary judgment. 3:21-1321-MGL-PJG, 2022 WL 18457742 (D.S.C. Dec. 8, 2022). However, Plaintiff's case is readily distinguishable from the plaintiff in *Kenny.* In *Kenny,* the plaintiff's supervisors made statements that were specifically in connection with the plaintiff's accommodation request such that the defendant stated it did not need to accommodate new employees with pre-existing conditions. *Id.* at 7.

Here, Palomba's email does not provide direct evidence that Plaintiff's disability was the but-for cause of his termination. Rather, Palomba's email indicates frustration with Plaintiff's inaction and insubordination rather than with Plaintiff's disability itself.

Accordingly, Plaintiff's second objection is overruled.

Objection 3

Plaintiff's third objection argues that the Report "errs in finding that Plaintiff cannot establish he was qualified for his job." (ECF No. 39, p. 6). Plaintiff avers that the Report ignored ample evidence that Plaintiff did lift items over forty pounds with an accommodation. *Id.*

Under the ADA, a "qualified individual" is "an individual who, with out without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). A plaintiff bears the burden of establishing that he can perform these essential functions with or without a reasonable accommodation. *Tyndall v. Nat'l Educ. Ctrs.*, 31 F.3d 209, 213 (4th Cir. 1994).

Here, the parties agreed on the essential functions of Plaintiff's position. One function was the ability to lift 40 pounds. Plaintiff argues that the Report "impermissibly narrows the evidence against the non-moving party and oversimplifies Plaintiff's execution of his job duties, observing that 'Defendant assigned Plaintiff a position that did not require heavy lifting' and one 'that all parties agree require Plaintiff to be able to lift 40 pounds and that all parties agree Plaintiff was unable to do so.'" (ECF No. 39, p. 7 (quoting ECF No. 33, p. 23)). Plaintiff argues this conclusion was flawed because "Defendant did not assign Plaintiff to a position that required no heavy lifting; it assigned him to a position that required no *unassisted* heavy lifting, which is itself a reasonable accommodation." *Id.* Further, Plaintiff avers that he did in fact perform heavy lifting with the assistance of other members of the cab department and with the assistance of a mini-crane and forklift. (ECF No. 39, p. 7).

Plaintiff's argument is ineffective. Reviewing the record most favorably to Plaintiff, he was assigned to the cab team as an accommodation. Plaintiff admitted that he cannot lift over fifteen pounds by himself due to his disability; less than the forty-pound essential function required by his position. The fact that Plaintiff was assigned to a position where he was able to perform the essential function of lifting forty pounds with the assistance of other team members or machines does not save this action from summary judgment. First, any accommodation that "would cause other employees to work harder, longer, or be deprived of opportunities is not mandated under the ADA." *Gardea v. JBS USA, LLC*, 915 F.3d 537, 542 (8th Cir. 2019). Second, while "reallocating or redistributing nonessential, marginal job functions is a potential reasonable job accommodation, … an accommodation is not reasonable under the ADA if it reallocates essential functions." *E.E.O.C. v. Womble Carlyle Sandridge & Rice, LLP*, 616 F. App'x 588, 593–94 (4th Cir. 2015) (cleaned up).

Therefore, Plaintiff did not provide evidence that he was qualified for his position. Accordingly, Plaintiff's third objection is overruled. Further, even if Plaintiff were to have shown he was qualified, this case would still be subject to summary judgment for the reasons stated in the Report and herein.

<u>Objection 4</u>

In Plaintiff's fourth objection, he argues that the Report "fails to find a genuine dispute as to causation." (ECF No. 39, p. 9). Specifically, Plaintiff argues that the Report failed to engage with Fourth Circuit precedent "recognizing that close temporal proximity alone can establish a jury question on causation." *Id.* Plaintiff avers that the temporal proximity is very tight here. Plaintiff first raised concerns about his disability in light of

newly-assigned wiring tasks and requested an accommodation in November 2022. He renewed this request several times through December 12, 2022, and he was terminated just two days after his latest conversation with Lewis about his "reasonable accommodation request," and one day after Palomba's above discussed email.

First, as addressed in Plaintiff's third objection, he failed to present evidence that he was qualified for his position and accordingly any arguments regarding causation are unnecessary. However, if Plaintiff were to have shown he was qualified, his claim is still subject to summary judgment because he cannot point to a dispute of material fact that his disability was the but-for cause of his termination.

As noted in the Report, "to illustrate pretext, Plaintiff must demonstrate the reason offered, in this case, for his termination, was merely pretextual and that his disability was the 'but-for cause' of his termination." (ECF No. 33, p. 25). Importantly, Fourth Circuit precedent provides that while temporal proximity may certainly be sufficient to make an initial *prima facie* showing of causation; "timing alone generally cannot defeat summary judgment once an employer has offered a convincing nonretaliatory explanation." *S.B. ex rel. A.L. v. Bd. of Educ. Of Harford Cnty.*, 819 F.3d 69, 79 (4th Cir. 2016). Additionally, "[w]hile very close temporal proximity between the protected activity and the adverse action can be probative of a causal connection, [if] intervening events occur between a plaintiff's protected activity and the adverse action that have a direct bearing on the adverse employment action, the causal connection will be broken." *Nowlin v. Dodson Bros. Exterminating Co.,* No. 4:18-CV-0480-SAL-TER, 2020 WL 4607260, at *11 (D.S.C. Feb.

6, 2020), r*eport and recommendation adopted*, No. 4:18-CV-0480-SAL, 2020 WL 2306610 (D.S.C. May 8, 2020) (citation omitted).

Here, Defendant presented that it terminated Plaintiff for a legitimate non-discriminatory reason, insubordination. As discussed in more depth below, Plaintiff failed to present any evidence to create a dispute of fact that this reason was pre-textual. Accordingly, while Plaintiff's termination did occur within two days of his last discussion regarding his disability, he failed to provide any evidence to create a dispute of material fact that his disability was the but-for cause of his termination rather than the intervening insubordinate conduct. Accordingly, Plaintiff's fourth objection is overruled.

Objection 5

In his fifth objection, Plaintiff argues that the Report "errs in finding that Plaintiff cannot establish pretext." (ECF No. 39, p. 10). Plaintiff raises two issues in this objection: (1) "rigid application of *McDonnel Douglas* at summary judgment is inappropriate;" and (2) "even under *McDonnel Douglas,* Plaintiff has established a genuine dispute as to pretext." *Id.* at 11–13. For the reasons discussed herein and, in the Report, both issues raised in this objection are overruled.

First, Plaintiff argues that recent Supreme Court and Fourth Circuit cases undercut the application of the *McDonnel Douglas*[1] burden shifting framework at summary judgment. (ECF No. 39, p. 11). Plaintiff cites to a concurrence by Justice Thomas in *Ames v. Ohio Dep't of Youth Serv,*[2] wherein he cast judgment on the *McDonnel Douglas*

---

[1] 411 U.S. 792 (1973).

[2] 605 U.S. 303, 319-26 (2025) (Thomas, J., concurring).

framework, and a similar concurrence by Justice Quattlebaum in *Hollis v. Morgan State University.*[3] (ECF No. 39, p. 11). Through only the citation to concurring opinions, Plaintiff asks this Court to ignore the voluminous precedent that requires this Court to apply the *McDonnel Douglas* framework for discrimination cases under Title VII and the ADA. In the absence of binding authority, the Court declines Plaintiff's invitation to take a new position in evaluating Title VII claims.

Second, Plaintiff argues that under *McDonnel Douglas,* he has established a genuine dispute of material fact as to pretext. *Id.* at 13. Specifically, Plaintiff argues that the Report took Defendant's proffered non-discriminatory reason for termination, insubordination, at face value and foreclosed the Rule 56 inquiry. *Id.* In so arguing, Plaintiff cites to *Duerr v. Richland Cnty.,* wherein during a meeting with supervisors, the plaintiff expressly stated that he believed the company was retaliating against him for his disability and thereafter threatened the company with legal action. No. 3:22-111-SAL-PJG, 2023 WL 5779419 (D.S.C. Mar. 30, 2023). Plaintiff is easily distinguishable from the *Duerr* plaintiff. In *Duerr,* the conduct for which the plaintiff was terminated occurred while the plaintiff was informing the defendant he felt he was being discriminated against. *Id.* at *1. The *Duerr* court found that the plaintiff's conduct during the meeting was obviously protected under the ADA and accordingly summary judgment was inappropriate. *Id.* at 5–6.

Here, the Report accurately found that Plaintiff was unable to show that the reason for his termination, insubordination that occurred over the course of several days, was pre-

[3] 153 F.4th 369, 388-89, 391 (4th Cir. 2025) (Quattlebaum, J., concurring).

textual. (ECF No. 33, p. 26). While Plaintiff argues that this insubordination was related to his disability, he fails to reconcile the Fourth Circuit Court of Appeal's holding in *Sigley* wherein the court held employee "misconduct—even misconduct related to a disability—is not itself a disability and an employer is free to fire an employee on that basis." *Sigley v. ND Fairmont LLC*, 129 F.4th 256 (4th Cir. 2025). Here, there is no dispute of material fact that the decision makers at Defendant determined Plaintiff was not working on the days in question and therefore terminated him for the insubordination. Therefore, the Report did not err in finding Plaintiff failed to show a dispute of material fact regarding pretext. Accordingly, Plaintiff's fifth objection is overruled.

<u>Objection 6</u>

Plaintiff's sixth objection argues that the Report failed "to conduct a distinct analysis of Plaintiff's retaliation claim." (ECF No. 39, p. 16). Plaintiff avers that "[r]ather than address the distinct elements of retaliation, the [Report] offers only that 'Plaintiff offers the same direct evidence in support of his ADA retaliation claim as he did in support of his ADA discrimination claims' and that 'the Court has also addressed Plaintiff's arguments and evidence concerning pretext'—and then recommends granting summary judgment on that thin basis." *Id.* (quoting ECF No. 33).

Plaintiff alleges that he "engaged in multiple forms of protected activity under the ADA, including requesting accommodations for his back and arm disabilities in November and December 2022 and reporting his concerns to [Lewis]." *Id.* Plaintiff also makes the same temporal proximity argument for his relation claim as addressed above in his objection regarding the discrimination claim.

While Plaintiff may be correct that the Report's analysis of his retaliation claim was brief in comparison to the analysis of his discrimination claim, that does not render it in error. Rather, the Report stated that to establish a *prima facie* case of retaliation under the ADA, Plaintiff must show that (1) he engaged in a protected activity, (2) the employer took an adverse employment action against him, and (3) a causal action existed between the protected activity and the adverse action. *Haulbrook v. Michelin N. Am.*, 252 F.3d 696, 706 (4th Cir. 2001). The Report then accurately noted that Plaintiff cited the same evidence to support his retaliation claim as he did to support his discrimination claim. Accordingly, for all of the reasons stated herein and in the Report that Plaintiff's discrimination claim fails, applying this same evidence to the elements of a retaliation claim, Plaintiff's retaliation claim also fails.

Thus, Plaintiff's sixth objection is overruled.

Objection 7

Plaintiff's seventh objection argues that the Report "errs in finding that Defendant met its interactive-process obligations and that no reasonable accommodation would have permitted Plaintiff to perform his job." (ECF No. 39, p. 17).

A plaintiff establishes a *prima facie* failure to accommodate claim by showing that: (1) he qualifies as a person with a disability; (2) the employer had notice of the disability; (3) the plaintiff could perform the essential functions of the position with a reasonable accommodation; and (4) the employer refused to make any reasonable accommodation. *Reyazuddin v. Montgomery County*, 789 F.3d 407, 415 (4th Cir. 2015).

Plaintiff argues that he supplied at least two reasonable accommodations that Defendant could have provided including allowing him to continue in the cab department and perform the essential functions of his position with the assistance of other employees, or exempting him from the cross-training on wiring tasks. However, as discussed at length in addressing Plaintiff's third objection, any accommodation that "would cause other employees to work harder, longer, or be deprived of opportunities is not mandated under the ADA." *Gardea v. JBS USA, LLC*, 915 F.3d 537, 542 (8th Cir. 2019). Further, while "reallocating or redistributing nonessential, marginal job functions is a potential reasonable job accommodation, … an accommodation is not reasonable under the ADA if it reallocates essential functions." *E.E.O.C. v. Womble Carlyle Sandridge & Rice, LLP*, 616 F. App'x 588, 593–94 (4th Cir. 2015) (cleaned up).

Accordingly, the Report correctly concluded that Plaintiff failed to offer any evidence of a reasonable accommodation that would have allowed him to perform the essential functions of his position. Thus, Plaintiff's seventh objection is overruled.

## IV. CONCLUSION

After a thorough review of the Report, the applicable law, and the record of this case, the Court finds no clear error in the Report. After a *de novo* review of each part of the Report to which Plaintiff specifically objected, the Court hereby adopts the Report and Recommendation. (ECF No. 33). For the reasons discussed above, and in the Report, Defendant's Motion for Summary Judgment, (ECF No. 26), is granted.

IT IS SO ORDERED.

August 17, 2026
Columbia, South Carolina

Joseph F. Anderson, Jr.
United States District Judge